We are not a de novo court when it comes to review of BIA determinations, right? We are subject to Chevron deference in this case. Do you agree? I agree that there was a Chevron analysis. The deference should not be afforded to the individual case here. Under step 1 of Chevron, do you think that this is so plainly obvious that there is no ambiguity that the agency can fill in? Yes, Your Honor. So you think that BIA's original decision is just wrong on its face? Yes, Your Honor. All right. You have one, what, five, six circuits against you and you have one circuit in your favor. I tend to think that the statute is ambiguous, among other things, because we're referring to two different agencies involved in giving a notice of hearing that belongs to the immigration court. On the other hand, the notice to appear comes from the BIA. So in light of that practicality, why isn't there some ambiguity in the statute? Well, 1299A, Your Honor, plainly and clearly defines what a notice to appear is. No, it doesn't. Not necessarily. I always say GI. Okay, so that's your argument, that that's a necessary reading. It's the only possible reading. Yes, there simply is no change in 1229A. So all of the requirements in A, which goes on for several pages, have to be met? Yes. I think that the fact that there's an affording of a postponement or an amendment, we're not asking Your Honor here to look at whether the notice to appear is defective on its face. What we're asking is that Your Honor, hold the congressional intent that 1229A, 1229B, D1, the stop time rule, the stop time rule that cuts off the 10 years of continuous presence, is only triggered when the in-person service of the notice to appear, that's what the court has texted. Well, where do you find statutory language that says that the notice to appear only serves to implicate the stop time rule if every item specified in Provision A for what the content of the notice to appear should be? Where do you find language that says that all of that content has got to be there in order for the notice to appear to implicate the stop time? The plain language of the statute, Your Honor. So you're saying a notice to appear is only a notice to appear if it has every item that's specified in Provision A. Otherwise, it is not a notice to appear. It's all or nothing for it to be a notice to appear. So Your Honor, I can't ignore that there is another section that allows to amend or postpone a hearing, but here there's simply no date specified whatsoever. It invites an illogical set of facts and conclusions that anything could possibly satisfy a notice to appear if one of the key ingredients under G1 that a time and date specified, that that is the language of the time and place at which the proceedings will be held. Congress knew, presumably, that the BIA issues the notice to appear, but the Immigration Court sets the date and time of hearing. So on your theory, the BIA first has to go to the Immigration Court, which is backed up for years in terms of getting a date and time. It then has to put it in the notice to appear and serve it on the immigrant who's undergoing removal. Correct? Well, I don't ask the Court to go that far. I do state that I do ask the Court to find that the stop time rule applies, as it's plainly stated in the statute, that a date and time when that's set as required under one of the ingredients listed under what defines a notice to appear on its face, on its plain text. This is not meant to be enigmatic. It's not supposed to be something else. Congress did not want these people who are here without permission to continue to be here and get the benefit of the delay caused by the Immigration Court in when it schedules a hearing. That's pretty clear from the legislative history. They were trying to solve a problem, but you're putting them exactly back into that problem. I think that the problem was where counsels would show up at the Immigration Court seven years shy of the 10 years and ask for continuances, and under the old suspension, would let the time run until after the seven years under the old suspension laws were approved. Here, no such fact exists. Mr. Fonseca Pereira simply was never notified of his date and time hearing until after the 10 years has passed. The stop time rule is meant to be a rulebook of sorts for people to apply for counsels who will just have the opportunity to ask an immigration judge to look at their lives. Here, Mr. Pereira has two children of tender age. He's been a hard-working person, and he would ask the Court to consider that. But you've informed us that you did ask the agency to exercise its discretion early on. You didn't get a favorable response, and now it's caught up in the Texas injunction. Well, that's a completely separate application. It certainly doesn't result in an offer from a resident status. It's merely just a... I know, but you're making a sort of mercy argument to us that we can't hear. It goes only to the agency, and you've not fared well on that. Well, I don't... you don't ask for that. I only responded to your suggestion that there is a backlog in the Court, and there's obviously a limited opportunity here for somebody to apply for cancellation. I would get back to the statute, Your Honor. The statute itself, in the 1229, is very clear in its list of what is required to define a new instrument of hearing. Counsel, I know you're appropriately very focused on plain language, but I do want to ask you, in what way does your client or any individual position your client at all prejudice by uncertainty when those peers receive as to the date and time of the hearing? What's at stake in uncertainty about that? I mean, that uncertainty does end when they get the proper notice, so why does this disadvantage your client in any way? You turn down the client for lawful progress? That's the legal consequence of the stop-time rule, but I'm just much more narrowly not knowing when the notice to appear is served, not knowing in that document what the date and time of the hearing is. How is your client disadvantaged by that? What bad thing does it do? As the law school of Alaska, it's the most recent circuit, decided only just this year, the third circuit. It is a critical proceeding, Your Honor. It is an opportunity to apply for lawful permanent residence, and so we're looking at the application of the stop-time rule to the 10 years of continuous residency. There's obviously two other, if I just may briefly, three ways that the continuous presence gets cut off, but the stop-time rule states when written service or in-person service, excuse me, to the respondent with a notice to appear. The notice to appear is defined at 1229A very plainly, and I ask the court to overrule the continuous presence of the motion court and follow the same reason that the law school of Alaska has from the third circuit decided this year. Thank you, Your Honor. Thank you. Good morning, Your Honor. My name is Jennifer Boise, and may it please the court, I represent the Attorney General of the United States in this matter. Your Honor, it is the court to take this opportunity to join five of its sister circuits and grant Chevron deference to the board's precedential decision in the matter of Camarillo. As the court was interested in during the petitioner's questioning in step one of the Chevron deference rubric, the text here is ambiguous, as five of our sister circuits have held. The third circuit, though, took an opposite approach. The court said that traditionally when a statute says it shall contain, that shall is mandatory, and in normal plain language construction, text construction, that's our usual take. Absolutely, Your Honor. However, statutory construction, most times when a statutory construction inquiry is made, the whole of the statute is considered. And I would argue that the petitioner and the third circuit both focused on section 1229A1 and the word shall narrowly and ignored the other parts of the statute in which the text is ambiguous. For example, part of the text that's ambiguous is this phrase under section 1229A. The question is whether the word under refers to definition to section 1229A in its entirety, whether it requires strict compliance with the rubric delineated in 1229A or something else. And so the phrase under a subsection can be ambiguous. And the Supreme Court has held as much in King v. Burwell in which it held that under the Affordable Care Act, the phrase under the section that sets out the state credits did not actually only refer to the state exchanges because that would obviate the entire statute. And here, too, the court should take a more comprehensive view of what the stop time rule means in context and how reading the statute in a certain way to require strict compliance would actually take the teeth almost entirely out of the stop time rule because of how it operates in context. Well, there is a connection between the notice to appear and the stop time rule. How much of the notice to appear needs to be complied with? Because I argue that the statute is ambiguous, Your Honor, I would say that the agency would have the opportunity to determine how much of the requirements in section 1229A1 are required in each case as it arises. And the case we have here is only a lack of the date and time of proceedings in the notice to appear. And I would argue, as Judge Lynch has pointed out, that the stop time in this context, the lack of a date and time specifically, does not, and Judge Lopez has also noted, does not change the way that the notice to appear puts the immigrant on notice that the Department of Homeland Security is interested in initiating proceedings against him. How many years, if you know, does it now take between a notice to appear being served on the immigrant and the scheduling of the hearing before the immigration court? Does it vary across the country? It does, Your Honor. How are we doing in New England? Your Honor, I believe there were recent, a recent news article in New England, things are being set very far in the future, in the 2020s, in pre-judicial hearings. And in general across the country, similar results are happening. The immigration courts are severely overburdened. They have not enough judges for a lot of cases, and the Department of Homeland Security cannot possibly find a date to set on these notices to appear. Well, in this case, the immigration court set a hearing, but unfortunately it sent the notice not to his postal address, but to his home address. All right? Mm-hmm. And then it doesn't follow up for over five years. And in fact, it doesn't follow up. It's the fact that this man is arrested, and presumably when he's arrested, he learns that an in absentia order has been entered. And so he gets a lawyer, and the lawyer goes to the immigration court and says, gee, can we remove the in absentia order and give him a new hearing? And the immigration court says, well, of course, and gives him a new hearing. But this wasn't exactly a straightforward progression toward getting him a hearing. That's correct, Your Honor. However, I would note that one of our sister circuits that has already decided this matter had a case very analogous to this. The Second Circuit case. Yeah, the Second Circuit case. The hearing was also removed in absentia and then subsequently reopened. And the Second Circuit no longer has grammage of redundance to this decision of the board. And as this court has also held a matter of – excuse me, not a matter of – in Vasquez v. Holder, just because the reading of a statute might result in some arbitrary or even unfair results does not mean that the agency did not interpret the statute reasonably. And so even though this particular petitioner did not receive notice of his original hearing because it was mailed to his home address. So if we don't follow the Third Circuit – well, the Third Circuit created a circuit split. Was there a petition for cert in the Third Circuit case? I'm not aware, Your Honor, but I would be happy to look into that and file a supplemental letter. I'm just not aware of the status of that case. Well, how is the BIA implementing the Third Circuit decision? Is there a stay or anything? I'm not aware. I do not know. But I would be happy to find out for you all if you're interested. I mean, because the argument is that because there are two different agencies, we can't give a date, which seems to be a very reasonable and practical consideration as far as interpreting the statute is concerned. But I'm just trying to figure out – the Third Circuit has said what it says. So the BIA has got to figure out something unless there's a stay or the Supreme Court is going to take it up. In my personal capacity, I certainly agree with you. I don't know the status of it, but I can find out in that email now. Counsel, putting aside Judge Thompson's important question about what's going on in the Third Circuit, to your knowledge, do these notices appear to ever include a specific time and date for the hearing? They very rarely do. I'm new to the Department of Justice, but in my personal capacity, I was a clerk at one of the immigration courts for two years, and I saw hundreds of notices to appear in Texas, and very few, if any, had dates. What did they ever? Did you see some with dates? Only very old ones, Your Honor. So you saw old ones that were original notices with dates? Mm-hmm, but from 10, 15, 20 years ago.  No, Your Honor, but it might have had to do with just there being a smaller universe and maybe a noisier conversation. I think the number of notices to appear in immigration proceedings, individual immigration proceedings, has ballooned, and the number of immigration judges has decreased. And so I think that has a lot to do with the fact that the Department isn't in a very practical position to be able to set these hearings. And I would look into what is happening in the Third Circuit, but my guess is that the Department has to put a date on it. The date would almost be arbitrary and not have a practical change in how it affects the petitioner's own equities and understanding of what is going to happen in these proceedings, because surely, I mean, in almost every instance, I would assume that that date would then have to be changed. The solution to this problem is just to pick a totally arbitrary date that has nothing to do with when the hearing will actually be held. Right, Your Honor. And therefore, to me, the statute in the way that the petitioner argues in the Third Circuit has advocated would not have a legal difference in the sense that it's requiring strict compliance to 1229A1, but practically, it wouldn't put the petitioner more on notice of where these proceedings are and it would only add a little more paperwork to the mountain of paperwork that immigration courts deal with on a day-to-day basis. It does away with one legal argument. That's true, Your Honor. I see that I'm almost out of time, so if there are any more questions, I would like to conclude. Your Honor, as this Court is focused on Step 1 of Chevron deference, I would urge the Court to find that this statute is ambiguous and that because the statute is ambiguous, we haven't focused very much on this fact with the boy. Were we to adopt the Third Circuit view, would you petition for certain? We might, Your Honor. That is not my authority to decide, but I would think that it would put us on a little more notice about the strength of the Circuit's view. If I may, I would like to make one final comment about the Third Circuit's decision. If that's all right with you. The Third Circuit also did the factual scenario of the Third Circuit's case is a little different from the rest. Yes, it is, definitely. Because in that case, the notice to appear also had the incorrect location of the hearing, and therefore, I would argue that it is not a perfect Circuit split in this instance. And so in conclusion, I would ask this Court to please grant Chevron deference to a matter of Camarillo, and if the Court does that, to deny this particular petition for review because the petitioner under a matter of Camarillo has legally failed to establish 10 years of continuous presence in the United States and therefore cannot apply for cancellation of removal. Thank you. Thank you for your time. Thank you.